Next case of the morning is number 18-40636, Martinez v. Walgreen, and we'll hear from I'm counsel for your appellants who are Mr. and Mrs. Longoria who were injured, the family of Claudia Martinez who was killed in the accident made the subject of this case. A Walgreens pharmacy in McAllen, Texas accidentally, mistakenly, negligently gave 85-year-old Elias Gamboa a bottle of anti-diabetic pills that were prescribed for another customer. Mr. Gamboa was not a diabetic. He had no prescription for the pills that Walgreens gave him. These pills impaired his driving, causing him to drive like he was drunk. He crashed his car. He killed himself. He killed 42-year-old Claudia Martinez in a horrific head-on collision, and he injured Mr. and Mrs. Longoria. Mr. Gamboa's sons found the bottle of pills in their father's apartment after his death. Toxicology was positive for this anti-diabetic medication. The pills that Walgreens gave Mr. Gamboa were a dangerous drug by definition. Not to quibble, I mean, was the toxicology positive for the drug itself or for the levels of chemicals in the body that were consistent with the drug having been ingested? Positive for the drug itself, Your Honor. Okay. And that's part of your record on appeal, and that's also Dr. Davis' report, which is in your record excerpts. The drug is a dangerous drug by definition. It requires a prescription. Dispensing a dangerous drug without a prescription, as happened in this case, is illegal under the Texas drug statutes. Mr. Gamboa's sons sued Walgreens for the wrongful death of their father, and that case settled. Walgreens tells this court in its brief that they made a mistake, they accidentally gave Mr. Gamboa the wrong drug. They further tell the court that the claims by Mr. Gamboa's sons were legitimate. Legitimate is how they characterized the claims. But even though Claudia Martinez was killed and Mr. and Mrs. Longoria were injured as a result of the same negligent act of Walgreens that killed Mr. Gamboa, the court dismissed their claims on the basis that Walgreens owed them no duty because they weren't customers of Walgreens. So the issue for the court is whether this duty that Walgreens has to its customer, which extends out to the customer's family, also extends out to third persons who are— Does it really extend to the customer's family? I mean, they're suing on behalf of the deceased, essentially, on behalf of the customer. That's correct. I don't see this distinction. I mean, that just seems so routine that that separate suit. I'm not sure how you're getting support for your theory from that. Well, it didn't used to be routine. There were times maybe in the 1990s when even family members couldn't sue negligent medical providers. But the law has evolved, and now you see many, many family members of people that are injured as a result of medical errors suing negligent medical providers. And I think the fact that the sons' claims are legitimate actually shows that perhaps these cases from the 1990s were moot. But the issue here is whether the duty extends outward, and I suggest that either on an eerie guess by this court or a certified question to the Texas Supreme Court, the answer should be yes, there is a duty for a very simple and sound reason. Texas law has long held a duty can arise if you cause or contribute to the impairment of a person that results in death or injury to third persons. That has been the law for decades. It may even go back to the 19th century, and it is the basis of dram shot actions. In this case, Mr. Gamboa's impairment was involuntary. No jury would find that he was not involuntarily impaired. Walgreens illegally dispensed a dangerous drug. Has any jurisdiction recognized this duty of pharmacies to non-customers? Excuse me, sir? Has any jurisdiction recognized the duty you're asking for in this case of pharmacies to non-customers? Your Honor, as far as I know, this issue has never come up. Right. And doesn't that — it is highly unusual, of course, a very tragic incident, but it's so unusual. Doesn't that affect the foreseeability analysis? Unlike dram shops where, I mean, all the time people are getting drunk at bars and going off and hurting people on the roads, here this is almost an unprecedented situation. Doesn't that affect the duty analysis? Your Honor, it's certainly foreseeable to the pharmacy that an elderly gentleman such as Mr. Gamboa, who is a Spanish-speaking gentleman, would simply assume that the pills that his pharmacy had given him were for him. Well, but the name — actually, the name on the bottle is someone else's name. That's correct, Your Honor. And the other person's name is Eliemar Amador. It's pretty different from Gamboa. It is, but the first name is Elias Gamboa. Eliemar, Eliemar, Elias, the first four — Well, I don't mean to quibble, as I say. It's a terrible case, but was he literate in Spanish? Your Honor, I don't know how literate the gentleman was. I know he still worked part-time. He was active in his church. He assumed that the pills that his pharmacy gave him were for him, and that is exactly why the Texas — I mean, he had been taking them for two weeks, right? The prescription predated the accident by a couple of weeks at least. Walgreens says that he picked the pills up. I don't know how many pills are still in the bottle. There were 60 pills in the original prescription. I don't know. I know that the other plaintiffs affirmed still has possession of the bottle. We didn't get far enough in discovery to really count the number of pills. But, Your Honor, this is not with respect to the foreseeability. It's certainly foreseeable that he would take the pills they gave him, and that's why the pharmacy regulations require that a pharmacist, before dispensing a drug, ensure that the right pills are being given to the right patient. That's exactly why that's in the law. Can't they lose their license if they screw up like this? They certainly can, Your Honor, and I don't know whether the Texas Pharmacy Board ever took any action or not. I just don't know. But, I mean, that is a remedy apart from creating a tort cause of action. That's certainly a remedy, an administrative remedy, but it doesn't help people like the Longoria's or the Martinez's. It doesn't help them because it wouldn't give them any compensation for their loss. But I do want to discuss briefly. I mean, obviously they can sue Mr. Gamboa. They'd have to show his negligence and then sue his estate. Your Honor, we— The money that his family, the estate, got from Walgreens could be used for that, right? Your Honor, the problem with that is that Mr. Gamboa was uninsured, and we didn't know anything about Walgreens until we started looking through the probate records. Didn't find any probate estate, but we saw that the Sons had sued Walgreens. This is how we discovered the case. So this is a—it's certainly a no-asset estate. There's no recovery there. But the money from the Walgreens settlement didn't go into the estate? Well, no, it went to Mr. Gamboa's Sons, Your Honor. They were the plaintiffs, the wrongful death plaintiffs, and that case has been dismissed. We didn't think that Mr. Gamboa had any liability. We thought it was exclusively Walgreens. But I do want to discuss one of the cases that I think Walgreens will discuss, and that's the Thapar decision out of the Supreme Court. And I want to put a spin on it that maybe you haven't heard before. Thapar is the case where the psychiatrist fails to warn a patient's family that the patient threatened to kill his stepfather, which he did apparently a month after he was released from the hospital. The patient's mother, who was also the stepfather's wife, sued the psychiatrist. Now, the lady didn't have any evidence that the psychiatrist caused or contributed to her son's mental illness. She didn't have any evidence that the psychiatrist had any control over her son. So, therefore, there was no duty there. The Supreme Court held that the psychiatrist had no duty to warn the family because he was precluded from doing it by the medical confidentiality statute at issue in the case. We think that that case was correctly decided on the facts. Let me change the facts just a little bit. How about if Dr. Thapar, the psychiatrist, gave Freddie Lilly, his patient, cocaine illegally that exacerbated his paranoia, exacerbated his delusions, and that he killed his stepfather when he was on the cocaine that the doctor gave him? Would that change the result in the case? It would have to. Why? He caused his impairment. And we think that the duty to the public by Walgreens in this case can be summarized in those four words. I don't — I really — you know, when you get beyond the customer relationship, this becomes very, very dicey from basically you're asking for social insurance because suppose Amazon is delivering a package to somebody and some person at Amazon negligently fails to include the warning instructions. And the person opens the package and then electrocutes themselves because the warning instruction wasn't there. And, you know, the person who received it has lent it to the third person who dies. I mean, where's the limit of liability for negligent acts by a provider of goods or services? Well, Your Honor, in a products liability context, the liability extends outward to whoever the user of the product is. And there's even a provision in the Medical Liability Act that it doesn't apply to products liability claims that are based on a mishandled product. And it's hard for me to understand how dispensing a dangerous drug without a prescription is any different than mishandling a dangerous product. Of course, this case was brought as a— That's my point, isn't it? Right. And it's a fact-intensive issue. And I don't think there's any kind of a bright line that would really instruct anybody exactly where the line is. What's your best authority in Texas law? Two cases, Your Honor. One is the Flynn case that's out of Houston. That's one of the intermediate court decisions that's cited by the Texas Supreme Court. The holding there was the doctor, Dr. Gerber, had no duty to the public because he did not give his patient the cocaine that impaired his driving. No cocaine, no duty. In this case, Walgreens gave Mr. Gamboa the dangerous drug that impaired his driving, and he injured and killed third persons. The other case that has been cited about 40 times around the country, that's the Goodin v. Tips case out of East Texas. That's been cited four times by the Texas Supreme Court, once by this court, and even cited by the district court in this case. This is the East Texas doctor who prescribes Quaaludes for his patient but does not warn her that they could impair her driving. So she crashes her car, and the doctor is then sued by the injured motorist. The court found that the doctor owed that motorist a duty because he had the affirmative act of prescribing the pills but not warning. Now, in this case, we're not saying that Walgreens failed to warn Mr. Gamboa. Failed to warn him of what? Not to take the pills that they had illegally given him? No. The case is more egregious than Goodin v. Tips because a failure to warn may be negligence, may be, but it's not illegal. What these people did was illegal. Dispensing a dangerous drug without a prescription is illegal. And the statute that prohibits that conduct protects the public. It protects the public. And there's definitely liability to the customer. The question is, how far out does that go? I mean, Goodin is an intermediate Texas decision from the 80s. There's really a failure to warn case. I mean, it just seems that's tough for us, a very different era in Texas jurisprudence, for us to say that informs what the Texas Supreme Court would do today. This is precisely why, Your Honor, because this is a question of public policy. Historically, this court has certified questions to the Texas Supreme Court, and the Texas Supreme Court has accepted those questions. And this is a great case for them because it's a very interesting issue. It's an opportunity for the Texas Supreme Court to perhaps clarify this area of law. It's a great record. I don't think the Texas Supreme Court will ever see a better record than this one. Now, let me talk a little bit about this. Plaintiffs' attorneys usually aren't the ones asking us to certify. But, I mean, I do think you recognize it's hard for us as an area court to extend state law. No, I think it's merely an application of this very ancient legal principle that if you cause or contribute to the impairment of a person and that person injures or kills third persons, there is a duty. So why were Dram Shop laws passed by positive law? Your Honor, the Texas Supreme Court had created the common law Dram Shop duty the week before the Texas legislature passed the Dram Shop Act. The Dram Shop, that merely codifies the holding that, in fact, the Dram Shop is liable to the public. Before that, there was no common law. A lot of the bars had no liability under the case law because they had no relationship with the person that was injured. That's my point. Right. No, the Dram Shop law codified the Texas Supreme Court's holding. It's just indistinguishable. How can public policy favor imposing a duty on a cashier who sells alcohol to somebody who's obviously intoxicated? Well, that's such a foreseeable result. Exactly. This seems almost unprecedented. Let me ask you, assume there's someone with serious mental health problems who receives medication and he goes to the pharmacy and, like this, they give him the wrong medication and it exacerbates his mental health problems and it results in a tragedy like a mass shooting. Under your theory, basically every victim would be able to sue the pharmacy, right? If the pharmacy correctly filled a valid prescription, the pharmacy has immunity under the learned intermediary. No, if they gave him the same thing here. Instead of giving him his medicine for bipolar disorder, they give him someone's anti-diabetic medication. Right. And the lack of his psychiatric medicine causes a terrible shooting. Right. Your theory would be all the victims would be able to sue. Maybe that's right. That is the implication of your theory. It is. There are going to be very unusual cases where third persons are affected. Most of the plaintiffs are going to be the patient, the patient's family. Highly unusual to have third persons. And if it's highly unusual, I guess why doesn't that go into the foreseeability analysis? It's foreseeable to them that he would be impaired by a medication that's known to cause hypoglycemia, these behavioral changes similar to being drunk. But excuse me, sir, but there are mistakes on both sides here. There's a mistake on the part of the pharmacy and there's a mistake on Mr. Gamboa's part for not reading the label on the prescription that he got. He obviously, if he took the medicine, that means he was attempting to comply with the prescription in everything but the name on the label. Your Honor, the issue of his comparative responsibility, if any, would be an issue for the jury to decide, and I think it's highly unlikely that a jury is going to put any comparative responsibility on this elderly gentleman who simply took the pill for responsibility. But, I mean, you could mis-prescribe, you could mis-sell aspirin to somebody who turned out to be very allergic to aspirin and went over and, you know, couldn't breathe and their heart stopped while they were driving the car and they did exactly the same thing. In a case like that, Your Honor, there would probably not be any liability. Why not? Well, because this is a prescription drug that is a dangerous drug by definition. It can only be given to somebody who needs the drug. Therefore, you've got the illegality in prescribing. But the pharmacist wouldn't be liable if the pharmacist, what you're saying is under Texas law the pharmacist would not be liable if the pharmacist gave the aspirin out to somebody who is dangerously allergic and said, well, just take a small amount or something. Because the negligence under Texas law doesn't extend to third people, third parties. Your Honor, I don't know what the limits of this are, other than to say that in a case like this where they've illegally dispensed a drug that has known side effects including hypoglycemia and behavioral changes, where they caused the problem, they caused his impairment involuntarily, there would have to be a duty to third persons that he killed or injured. My time is up. Okay, thank you. Ms. Barger. May it please the Court. Jessica Barger for Walgreens. Time and time again, the Texas Supreme Court has been given many opportunities to impose duties from health care providers and pharmacists to third parties that are not their customers or patients, and they've been very reluctant to do so. Let me ask you a question. You removed this case to federal court, didn't you? Correct. Why? This court is sitting in diversity, and the parties were diverse. I know you have the right to remove, but was Walgreens so worried about the outcome in the state courts? I mean, because you're going to come to us and say there's absolutely no law that justifies this, and we can't go there under Erie, which is really a cheap victory for Walgreens if it occurs, whereas if you went through the state courts, you'd get the definitive ruling that you say is inevitable. Well, Your Honor, I wasn't involved in the decision to remove because I wasn't a counsel at the time, but I can say typically if there is complete diversity in most situations, our clients take the opportunity to remove to federal court for whatever reason. You get a different jury pool. Excuse me? You get a different jury pool. South Texas. Well, I mean, I think— Summary judgment and motions to dismiss are more commonly granted in federal court. I mean, as this panel knows, regardless of whether it is a summary judgment or a motion to dismiss, in state court, you know, summary judgments are often denied. I don't know if that's the reason we did. Ultimately, I think if we would have stayed in state court and we lost on summary judgment, we would have made the same arguments on Jano v. and directed verdict, and we would have eventually ended up in the Texas Supreme Court, and I think that's where we end up. I don't think this court needs to go there. I think this court has ample authority and direction from our Texas Supreme Court to make and affirm the district court's ruling. I think the Texas Supreme Court has spoken on this issue, and they are reluctant to impose their duties on third parties regardless, particularly in this context. And I'd like to address a couple points that Judge Costin made. First, as to the Gamboas, the Gamboas' claims were legitimate. The Gamboas, under statute, as you know, they have a wrongful death. The legislature has given them the exclusive right of your spouse, parents, or children. So I think those claims are clearly different than the third-party claims here, and I don't think you can make the analogy just because we settled or we said that those claims were legitimate. Second, Judge Costa asked if there was any other jurisdiction that has imposed a duty on a pharmacist in these kind of scenarios. I have read extensive law review articles and restatement sections. Many jurisdictions are currently across the United States very reluctant to impose duties on pharmacies for particular reasons of public policy, opening the floodgates, the learn-in-a-mediary doctrine. In fact, we cite a case in our brief where Nevada also, it was a pharmaceutical situation, and in that case, Nevada has a special kind of reporting statute. They say if there are people who go to many pharmacies or drug places to get prescriptions for a lot of drugs, they go in a database, and then that letter goes out to surrounding pharmacies. In that situation that happened here, the letter went out, the patient was still given the medication, the patient then got in an accident, and there Nevada refused to extend even in that situation a duty onto the pharmacy. And I think the Texas Supreme Court would do the same thing here in this factual scenario, just like they have been doing continuously since basically 1994 in the Byrd case, and I think the Thaper case is very instructive. I think the Thaper case makes the very distinguishment that this panel was making between failure to warn and negligent treatment cases. In that case, there were two different scenarios. There was a scenario where the theory was is there a duty that flowed from the psychiatrist to warn, and they said no because of the confidentiality statute. But prior to that, was there a duty to this third party, the mother, the wife of the stepfather who was killed? Let me ask you a question about the facts of the case. What was the protocol in place for the identification of the purchase of the drugs here? Most drugs, not most drug companies, pharmacists, they insist on a driver's license. What was the protocol in effect here? The protocol and the facts in this case? Yes. Walgreens has policies and procedures in place to check names and addresses. There's legislation, as you know, Your Honor, to follow to make sure that you check the name, the address, and then the bottle is properly labeled. So there is already legislation in place that is to present this very mistake. What was in place at the time of this incident? At the time of this incident? Yes. That legislation was in place, and Walgreens' policies and procedures to check the name and address was also in place. Okay. Well, that's why I thought so. But how was it deviated from here? Do we know? Does the record show? The record does not show. A lot of it, the only facts in front of this Court are the duty analysis. All we know is that he received, he got in the accident, the autopsy showed this medication, and then his children found the bottle of medication in his apartment after the accident, and it appeared that there was maybe four or five pills missing. And I think that all of those issues, which counsel also has argued in his brief as to the comparative causation. Did he pay cash for the drug or did he use a credit card? Excuse me, Your Honor? Did he pay cash for the drug or did he use a credit card? Your Honor, I'm not sure if he paid cash or used a credit card. I'm trying to get at the question of what actually happened factually here in terms of identification, and you're not telling me anything about what actually happened here. You're talking about the regulatory regime, and they got the wrong person. But for all we know, they didn't ask any questions. They handed it to him. But I find it hard to believe. We are going to take the position if this case goes back down? We can take the position, whatever position you want to take. The record does not reflect. I don't know what the facts are, and you apparently don't know. Your Honor, that is correct. The record, our record, the record in front of this court. I'm not faulting you. Somebody's handed you a record, but I'm just trying to understand what's in the record. Nothing. In the record is really as far, I mean, as the briefing on the duty issue, the expert reports are also in the record that show the toxicology. But as far as that, the petition is in there with the allegations. Was the person ever, the Walgreens employee ever identified? I mean, Gamboa is obviously deceased, so he can't testify as to what happened. So was the Walgreens employee who handed over the pills ever identified? I can ask my co-counsel who is involved. That's not in the record. This was a motion to dismiss, right? As far as I think he was identified, all of these issues would be fleshed out in discovery. Given the regulations that could result in the loss of a license and the fact that there is a duty to customers, you make all these public policy arguments that a duty would inhibit pharmacies. I mean, how does it really add to the strong incentive pharmacies already have to make sure medicine gets to the right people? I think that right here we are going to dispute all of those underlying facts. I mean, as to how he got the medicine or how he got the wrong medicine or what he did with the medicine. I'm talking about your legal issue on duty. You say if we said there is a duty to the plaintiffs in this case, if we expand the Texas law that way or read Texas law that way, that it would create this real big burden on the pharmacies that might inhibit people from wanting to sell prescription drugs. But it seems like there's already such strong reasons. There's state regulation. There's the duty to customers. So why would this add to the burden on pharmacies or cause them to change their practices? I think this court would have to weigh all the factors that the Supreme Court of Texas would do if it's going to find that the authorities that are not out there are ample authority to affirm. And I think you would have to look at not just that. You'd have to look at the foreseeability, the risk of the injury versus the social utility. The social utility of running a pharmacy is similar in the situation. I don't think you understand my question. I know there's a lot of social utility. But why would the ñ your brief argues that giving liability or giving a tort right to third parties would inhibit this social utility of pharmacies. They'd be reluctant to give out drugs. But there's already such strong incentives and regulation. Why would that ñ I mean, you really think pharmacies would stop prescribing drugs or you'd have to change their entire policies if there was a right to third parties? I think it would impose a floodgate of a lot of litigation, not just against pharmacies. I mean, not just in this scenario, but, you know, in a misfill situation where the Dallas Court of Appeals has already addressed that it doesn't work and that there would be no ñ there's no duty to the parents of the child that got the wrong medication. And I think that it could expand by doing that. It could expand to beyond the cost of it for other health care providers and doctors, which is why there is so much legislation, you know, regulating medical malpractice and including all of the caps. And I think the legislation brings me to a point with these ñ you shouldn't dispense drugs without a prescription. And whether this is negligence per se, I think that this court has already held in Allen v. Walmart, which was addressed the El Chico situation, because they're trying to extend this kind of situation to the Dram Shop, which doesn't work. And this court has said that the Texas Supreme Court has already been reluctant to take El Chico further to the sale of other harmful products. And I think it all comes down to expanding the duty for the cost of the health care system, which are all the public policy reasons against imposing and getting, you know, duty to these pharmacists. And I also think that the intermediate courts have addressed these statutes. The intermediate courts in Texas, Austin, Dallas, and Amarillo. In Dallas, in the Eckerd case, they addressed these statutes, and they said the pharmacy rules and the admin rules do not create negligence per se. In the Drennan v. Community Health case, they addressed specifically the statute of dispensing drugs without a prescription, and they said that was not negligence per se. And I think that as this court recognized, Texas is very, very reluctant to impose a duty through these statutes. And I think that it would chill the whole pharmacy litigation or pharmaceutical dispensing. I think there is already regulation in place, and we believe that there is ample authority under all of the Texas Supreme Court authorities not to extend or expand duty here. Your Honors, if anyone has any further questions, I think I'm going to give back some of my time. Yes, we don't. Thank you. The basis for their duty to Mr. Gamboa, to his family, to the public, including your appellants, can be summarized in four words. They caused his impairment. They caused his impairment. And if you look through all of the Texas laws going back to the 19th century, you will see that that basis of liability has been employed in cases that are at least peripherally similar to this one. They caused his impairment. It's undisputed that they caused his impairment. The Gamboa sons were wrongful death plaintiffs. So were Claudia Martinez's parents and her husband. There's no distinction there. The Nevada case they talk about, it's an extreme example of the Warren Intermediary Doctrine, where 13 pharmacies in Nevada, including Walgreens, dispensed 4,500 codone pills to a woman who crashed her car, killed a man. The prescriptions were all valid. Incredible. And that was the basis that there was no liability. Plus, the Nevada statutes were a little bit different. Social utility. Our argument is there's no social utility in illegally dispensing dangerous drugs. They're saying that, yes, but the pharmacy industry has social utility. The argument doesn't work. The trucking industry has social utility. We need trucks to move things around. Does that mean you can't sue the negligent truck driver who kills your family? No. The pharmacy industry has social utility. So you can't sue the negligent pharmacy that kills your wife, kills your daughter, Claudia Martinez? No. If there was any social utility in dispensing dangerous drugs without a prescription, why does the state of Texas criminalize it? It criminalizes it. Damages, this is not going to bankrupt them. Remember, the damages are capped in MedMal, capped at $500,000, $250,000 for non-economic damages. Are pharmacies under the MedMal caps? Your Honor, they are. They're within the definition, this broad definition in the medical liability statute. Is there a case that says that? There is, Your Honor. There's a Texas Supreme Court case. It's the Randall Mills case that's cited in the brief. It's certainly not going to bankrupt them. And remember also that the Texas Constitution does not give them any kind of immunity. Remember, the Constitution had to be amended in 2003 to authorize the legislature to cap the damages in MedMal. If the voters wanted to amend the Constitution to give them immunity, they would have done it. They didn't do it. They didn't do it in 2003. They're not going to do it today. The legislature hasn't given them immunity. They certainly haven't given them the immunity in the medical liability statute. And the Texas Supreme Court hasn't given them immunity, and it can't because it has to walk that constitutional path. What's the difference between the Thapar case and this case in terms of, I mean, again, you tried to distinguish it. But they've said, according to Thapar, they've said numerous times the doctors who misdiagnosed are not liable for third-party consequences. Your Honor, are you saying the Eckerd case? Because I'm not — I'm hearing an Eckerd. I'm trying to say Thapar. I still can't hear what you're saying. Thapar? I call it T-H-A-P-A-R. Thapar, of course. I'm sorry. Yeah, that was the case that we discussed. But remember, Your Honor, that the doctor in that case didn't cause or contribute to the patient's mental illness. But according to my hypothetical, what if he had given him cochlear — Well, how do we know? Because if he had given the patient a Paxil or something, the patient might have been sedated and not inclined to kill his stepfather. That's right. And that's why the case is correctly decided on its facts. The doctor didn't do anything to make the — But the doctor, if the doctor — you know, the doctor might have consequences in terms of his license. Absolutely, Your Honor. Well, that's, quote, illegal in the same way you say this is illegal. That's right, Your Honor. There would be consequences on the doctor, but that wouldn't affect the tort liability. I would urge certification of the case. Obviously, there's a huge disagreement over what Texas public policy is with respect to liability to third persons by pharmacies. If we go to the Texas Supreme Court, I will make this suggestion to them, that Claudia Martinez was alone in her car when she was killed. How about if instead of Claudia, it was a family of people — the mother, the father, three kids in the back, and the sole survivor of that horror is one of the kids. It's a little girl. Is the Supreme Court of Texas going to tell that child, who has lost her whole family as a result of this pharmacy error, that she can't sue them because she wasn't with her customer? Are they going to tell her that? Never. They would say instead that there is a limited duty in a case like this based on these very, very — Well, you said — on the one hand, you said it's limited. On the other hand, in response to a couple of hypotheticals from Judge Costa, you say, I don't know where this goes. It's limited — So it's just a — you know, it's the beginning of unlimited liability. Well, Your Honor, it's certainly limited to these very unusual facts in this case, including the undisputable fact that they caused his impairment. Unless there's further questions from the Court, good day. Thank you. Thank you, sir. Very interesting case.